Morris Int'l, Inc. v. Packer, 2021 NCBC 66A.

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

MORRIS INTERNATIONAL, INC.,

Plaintiff,

v.

ANTHONY WILLIAM PACKER;
PACKER INVESTMENT
COMPANY, INC.; PA&K, LLC;
OLDE BEAU GENERAL
PARTNERSHIP, KPP, LLC;
KENNINGTON INVESTMENT
COMPANY, INC.; BARRY POOLE;
LAURA POOLE; SHERRI
KENNINGTON FAGEN; KRISTI
KENNINGTON HALL; and KATHY
KENNINGTON DAVIS,

Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
20 CVS 2156

**AMENDED ORDER AND OPINION
ON MOTIONS FOR SUMMARY
JUDGMENT**

THIS MATTER comes before the Court on (1) Defendants Anthony William Packer, Packer Investment Company, Inc., PA&K, LLC, Olde Beau General Partnership, and KPP, LLC's Motion for Summary Judgment (ECF No. 95); (2) Defendant Kennington Investment Company, Inc's Motion for Summary Judgment (ECF No. 98); and (3) and Counter-Plaintiff KPP, LLC's Motion for Partial Summary Judgment (ECF No. 100).

The Court, having considered the Motions, the briefs, the affidavits and other submissions of the parties, the entire record, and the arguments of counsel, CONCLUDES that the Motion of Defendants Anthony William Packer, Packer Investment Company, Inc., PA&K, LLC, Olde Beau General Partnership, and KPP, LLC should be GRANTED in part and DENIED in part; Defendant Kennington

Investment Company, Inc's Motion should be GRANTED; and Counter-Plaintiff KPP, LLC's Motion should be DENIED for the reasons set forth below.

*Morris Law Firm, PLLC, by Bradley C. Morris, for Plaintiff Morris International Inc.*

*Jerry Meek, Attorney at Law, PLLC, by Gerald F. Meek, and Vann Law Firm, by Christopher M. Vann, for Defendants Anthony William Packer, Packer Investment Company, Inc., PA&K, LLC, Olde Beau General Partnership, and KPP, LLC.*

*James, McElroy & Diehl, P.A., by Alexandra Bachman and Fred B. Monroe, for Defendant Kennington Investment Company, Inc.*

Davis, Judge.

## INTRODUCTION

1. This case is another example of a business relationship gone bad. Although the initial hope was that a joint venture between Sid Morris and Billy Packer would produce a viable luxury RV park at the Olde Beau property in Alleghany County, it was not meant to be. Packer ultimately initiated a similar project with new partners and without Morris, giving rise to the present lawsuit. The primary issue presently before the Court is whether a triable issue of fact exists related to certain obligations Packer owed to Morris upon the dissolution of the original joint venture.

## FACTUAL AND PROCEDURAL BACKGROUND

2. "The Court does not make findings of fact on motions for summary judgment. Instead, the Court summarizes material facts it considers to be undisputed to provide context for the Motions." *Duke Energy Carolinas, LLC v. AG Ins. SA/NV*, 2021 NCBC LEXIS 67, at **4–5 (N.C. Super. Ct. Aug. 4, 2021).

3. Morris is the President of Morris International, Inc. ("MI"), a marketing and advertising company. (Morris Affidavit, ECF No. 104.32, at ¶¶ 1–2.) MI is the Plaintiff in this action.

4. Packer is the sole owner of Packer Investment Company, Inc. ("PIC"). (Packer Affidavit, ECF No. 96.1, at ¶ 2.)

5. PIC, in turn, is one of the two co-owners of Olde Beau General Partnership ("OBGP"). OBGP is a general partnership that owns Olde Beau, an 850-acre parcel of land in Alleghany County that includes a golf club and lots titled to individual property owners. (Packer Affidavit, ECF No. 96.1, at ¶ 2; Packer Deposition, ECF No. 96.2, at p. 16–17.)

6. The other co-owner of OBGP is Kennington Investment Company ("KIC"). (ECF No. 96.2, at 16–17.) The principal owner of KIC was Curt Kennington, who is now deceased. (*Id.* at 17.)

7. Packer and Kennington were also the co-owners of an entity called PA&K, LLC ("PA&K"). (*Id.*)

8. In 2008, an individual named Barry Poole approached Packer about the possibility of developing an RV park at Olde Beau. (*Id.* at p. 16.) Although Packer initially dismissed the idea, he changed his mind several years later and contacted Morris about getting involved with the project. At the time, Morris was working on an RV project in development in Virginia, and Packer was aware of Morris' activities through a friend. (*Id.* at p. 32–33.)

9. In 2015, Packer, through PA&K, signed an agreement with Morris' company, MI, to form a joint venture (the "Joint Venture") regarding the establishment of an RV resort on the Old Beau property. (JV Agreement, ECF No. 96.6.) The written agreement set out the parameters of the Joint Venture. (*Id.*) Morris was to perform marketing services for the Joint Venture, while Packer would provide the necessary land for the project and "serve as a liaison to the existing Olde Beau community." (*Id.*)

10. Initial work began on the project in 2015. Morris contracted with several companies to assist with pre-construction activities for the Joint Venture. (Morris Affidavit, ECF No. 104.32, at ¶ 8.) For example, Morris hired Tetra Tech to perform soil surveys on the site, retained Site Design to create conceptual plans for the Joint Venture, engaged Blue Ridge Surveying to do a topographical survey of the land, and engaged BowStern, a media marketing company, in connection with the project. (ECF No. 96.1, at ¶¶ 3–9; ECF No. 104.32, at ¶¶ 8–13.) Morris also engaged RV Park Consulting to provide additional services. (RV Park Consulting Letter, ECF No. 96.14.)

11. The parties disagree over the extent to which Packer was given access to the work product generated by the above-referenced firms. Morris testified that MI "routinely and consistently provided" Packer with copies of all documents or other items that were produced in furtherance of the Joint Venture. (ECF No. 104.32, at ¶ 14.) Packer, conversely, either denies outright or claims to lack any recollection of

ever being provided with the Tetra Tech surveys or the Blue Ridge surveys. (ECF No. 96.1, at ¶¶ 5–9.)

12. On January 11, 2016, a zoning hearing took place in which the Alleghany County Planning Board granted the Joint Venture's rezoning request for the proposed development. (*Id.* at ¶ 10.) At the hearing, however, there was vocal opposition by a number of Olde Beau members, who were unhappy with the project and threatened legal action to stop it. (ECF No. 104.32, at ¶ 19.)

13. Packer met with Morris on August 24, 2016, where they discussed the threat to the feasibility of the Joint Venture posed by the Olde Beau residents who opposed the project. (*Id.* at ¶ 22.) As a result of that meeting, Packer sent Morris a letter on August 31, 2016 stating his belief that the RV project was not reasonable to pursue "in the current environment." (*Id.*)

14. By April 2017—unbeknownst to Morris—Packer, Poole, and an individual named Brian Hall had begun talks regarding a *new* RV project (the "KPP Project") at Olde Beau. (Packer Deposition, ECF No. 104.11 at p. 175–76.) These talks resulted in the formation of an entity called KPP, LLC ("KPP"). (*Id.*) OBGP was a co-owner of KPP, and a Poole-affiliated limited liability company called Deercreek Outdoors, LLC was the other co-owner. (Poole Affidavit, ECF No. 96.32, at ¶ 3.)

15. In November 2017, Morris learned that Poole was working on a project involving a new RV park at Olde Beau. (ECF No. 104.32, at ¶ 24.) On April 12, 2018, Morris, through his attorney, sent a letter to Packer seeking information about the

status of the RV project at Old Beau. The letter stated that Morris was "pleased to see that evidently the opposition group has relented or acquiesced to development of the RV Resort." (4/12/2018 Letter ECF No. 96.27.) The letter also requested that Packer provide "relevant information about the project, including its current status, prospects going forward, and plans for further development of the joint venture project." (*Id.*) Finally, the letter requested that Packer provide Morris with "books and records of the project, drawings and plans, marketing materials and plans, any existing or pending contracts with vendors or purchasers, and other information relevant to this project." (*Id.*)

16. Packer never responded to the letter. However, Morris and Packer met in July 2018. At this meeting, Morris demanded that he be given one of the lots at the new RV resort. (ECF No. 96.1, at ¶12.) The record is devoid of any evidence that Packer granted Morris' request. This was the last communication between Morris and Packer prior to the filing of this lawsuit. (*Id.*)

17. MI initiated this action on January 30, 2020. (Complaint, ECF No. 3.) In its complaint, MI asserted claims against Packer, PIC, PA&K, OBGP, KPP, KIC, Barry Poole, Laura Poole, Sherri Kennington Fagan, Kristi Kennington Hall, and Kathy Kennington Davis. (ECF No. 3, at ¶¶ 1–12.)[1]

18. On February 3, 2020, MI filed a Notice of Lis Pendens regarding the property to be used for the new RV Resort. (Motion to Cancel Notice of Lis Pendens, ECF No. 6 at p. 1.) Packer, PIC, PA&K, OBGP and KPP filed a motion to cancel the

---

[1] For clarity, Packer, PIC, PA&K, OBGP, and KPP are referred to at various times throughout this opinion collectively as the "Packer Defendants."

Notice of Lis Pendens on February 20, 2020.  (*Id.* at p. 2.)  On February 27, 2020, the Honorable Karen Eady-Williams cancelled MI's Notice of Lis Pendens.  (ECF No. 7.)

19.   The Complaint was subsequently amended on March 2, 2020.  (Amended Complaint, ECF No. 4.)  MI also filed an Amended Notice of Lis Pendens on that same date as to "real estate in the Olde Beau Subdivision, including land devoted to an RV resort."  (ECF No. 8.)

20.   The Amended Complaint asserted claims for breach of contract against PA&K and OBGP; breach of fiduciary duty against PA&K and OBGP; conversion against PA&K, Packer, Barry and Laura Poole, Hall, Davis, Fagan, OBGP, KIC, PIC, and KPP; unfair and deceptive trade practices against PA&K, Packer, Barry and Laura Poole, Davis, Hall, Fagan, OBGP, KPP, KIC, and PIC; tortious interference with a business contract and relationship against Barry and Laura Poole, Davis, Fagan, Hall, KPP, KIC, and PIC; and civil conspiracy against PA&K, Packer, OBGP, Barry and Laura Poole, Fagan, Davis, Hall, KPP, KIC, and PIC.  (ECF No. 4 at ¶¶ 41–100.)  The Amended Complaint also requested that the Court "dissolve the joint venture and order an accounting of the partners' respective interests, and prohibit PA&K and OBGP, as breaching partners who caused the dissolution, from operating the Olde Beau Joint Venture during any accounting."  (*Id.* at ¶ 104.)  MI further requested that a constructive trust be created, alleging that "OBGP's obligation to convey the subject real estate to the Olde Beau Joint Venture, combined with its fiduciary duties owed to MI and the joint venture, created an equitable interest in the subject real estate."  (*Id.* at ¶ 63.)  Finally, MI asserted its entitlement to an equitable

lien "against the subject real estate identified in the JV Agreement and through the course of conduct of the parties, and constituting the real estate now zoned as the RV Resort." (*Id.* at ¶¶ 105–11.)

21.     This action was designated a mandatory complex busines case on March 3, 2020 and assigned to the Honorable Gregory P. McGuire. (Designation Order, ECF No. 1; Assignment Order, ECF No. 2.)

22.     Over the next several weeks, all Defendants filed either motions to dismiss pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure or motions for judgment on the pleadings under Rule 12(c). (ECF Nos. 19, 22, 26, 29.)

23.     Packer, PIC, PA&K, OBGP, and KPP moved to cancel the Amended Notice of Lis Pendens on April 30, 2020. (ECF No. 31.)

24.     On August 7, 2020, KPP filed an answer in which it asserted counterclaims against MI for (1) slander of title; (2) violation of N.C.G.S. § 47B-6; (3) tortious interference with contract; and (4) tortious interference with prospective economic advantage. (ECF No. 55, at ¶¶ 15–36, pp. 14–16.)

25.     On October 15, 2020, the Court issued an Order dismissing all claims against Barry and Laura Poole. (ECF No 61, at p. 26.)

26.     KPP and OBGP filed a renewed motion to cancel the Amended Notice of Lis Pendens on October 22, 2020. (ECF No. 64.)

27.     On November 19, 2020, MI voluntarily dismissed its claims against Fagan, Hall, and Davis. (ECF No. 77.)

28. On December 18, 2020, the Court entered an Order cancelling MI's Amended Notice of Lis Pendens. (ECF No. 84.)

29. On February 22, 2021, the Court issued an Order ruling on Defendants' other pending motions. (ECF No. 92.) The Court concluded that based on the allegations contained in Plaintiffs' Amended Complaint, the Joint Venture had dissolved "on or about August 31, 2016." (*Id.* at ¶¶ 33–34.) The Court dismissed MI's claims for breach of contract, tortious interference with contract, dissolution, accounting, constructive trust, and equitable lien. (*Id.* at ¶¶ 35–82.) The Court also dismissed MI's claims for conversion against Packer and KPP. (*Id.* at ¶ 51.) However, the Court determined that the Amended Complaint stated a valid claim for relief against PA&K and OBGP for breach of fiduciary duty on two distinct theories: (1) "failure to preserve and account for partnership property" and (2) "failure to provide access to the books, records, and other information regarding the Joint Venture." (*Id.* at ¶ 43.) The Court also allowed MI to proceed on its claim for conversion against PA&K, OBGP, PIC, and KIC, its claim for unfair and deceptive trade practices against the Packer Defendants and KIC, and its claim for civil conspiracy against the Packer Defendants and KIC. (*Id.* at ¶¶ 45–82.)

30. On May 20, 2021, Defendants Packer, PIC, PA&K, OBGP, KPP, and KIC all moved for summary judgment pursuant to Rule 56 as to all remaining claims against them. (ECF Nos. 95, 98.)

31. On May 21, 2021, KPP filed a motion for partial summary judgment—solely on the issue of liability—in support of its counterclaim for tortious interference with contract. (ECF No. 100.)

32. On July 1, 2021, this matter was reassigned to the undersigned. (ECF No. 108.)

33. This action came before the Court for a hearing on August 19, 2021. The parties' Motions for Summary Judgment are now ripe for ruling.

## LEGAL STANDARD

34. "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law.'" *Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, 365 N.C. 520, 523 (2012) (quoting N.C.G.S. § 1A-1, Rule 56(c)). The moving party bears the burden of presenting evidence showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Hensley v. Nat'l Freight Transp., Inc.*, 193 N.C. App. 561, 563 (2008) (citation omitted). The moving party may meet this burden by "proving an essential element of the opposing party's claim does not exist, cannot be proven at trial, or would be barred by an affirmative defense." *Variety Wholesalers, Inc.*, 365 N.C. at 523 (citation omitted). An issue is "material" if "resolution of the issue is so essential that the party against whom it is resolved may not prevail." *McNair v. Boyette*, 282 N.C. 230,

235 (1972) (quotation omitted). "A 'genuine issue' is one that can be maintained by substantial evidence." *Dobson v. Harris*, 352 N.C. 77, 83 (2000) (citation omitted).

35. Once the movant presents evidence in support of the motion, the nonmovant "cannot rely on the allegations or denials set forth in her pleading [ ] and must, instead, forecast sufficient evidence to show the existence of a genuine issue of material fact in order to preclude an award of summary judgment." *Steele v. Bowden*, 238 N.C. App. 566, 577 (2014) (internal citation omitted). At the summary judgment stage, a party is not permitted to rely upon evidence that would require the factfinder to "engage in impermissible speculation and conjecture[.]" *Aym Techs., LLC v. Rodgers*, 2019 NCBC LEXIS 64, at *34 (N.C. Super. Ct. Oct. 16, 2019) (citation omitted).

36. In determining whether the non-movant has met its burden in opposing a motion for summary judgment, the judge "unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict[.]" *Sloan v. Miller Bldg. Corp.*, 119 N.C. App. 162, 165–66 (1995) (quotation omitted). In conducting its analysis, the Court must view the evidence in the light most favorable to the nonmoving party. *Dobson*, 352 N.C. at 83 (citation omitted).

## ANALYSIS

### A. Reconsideration of Prior Order

37. At the outset, the Court deems it appropriate to address a threshold issue raised by MI in its brief in opposition to Defendants' summary judgment motions. Although MI never filed a motion for reconsideration of the Court's

February 22, 2021 Order, MI's response brief at the summary judgment stage contains a request that the Court revisit its prior ruling that the Joint Venture was dissolved "on or about August 31, 2016." (ECF No. 92, at ¶ 33.) MI requests that the Court reconsider that conclusion under North Carolina Rule of Civil Procedure 54(b). Because a willingness by the Court to reconsider its prior ruling regarding the Joint Venture's dissolution date would impact the Court's analysis on several of the substantive issues raised in the pending motions, the Court elects to address this issue first.

38.     MI's request for reconsideration is directed to the following portion of the Court's February 22, 2021 Order:

> After thorough consideration, the Court concludes that Plaintiff's allegations establish that on or about August 31, 2016, the development of the luxury RV resort had become impracticable, the Joint Venture's purpose could not reasonably be accomplished, and the Joint Venture dissolved. *Oliver v. Roberts*, 49 N.C. App. at 315–316. Plaintiff alleges that after a seven-month delay in the project, it "understood" the RV resort project to be at an end on or about August 31, 2016, and that "Packer, PA&K and OBGP would pursue other opportunities to develop or sell components of the [Property]." (ECF No. 4, at ¶ 35.) Plaintiff does not claim that it objected to Packer's assertion that the project could not proceed. To the contrary, Plaintiff makes other allegations consistent with an understanding that the Joint Venture had ceased. Plaintiff alleges that Packer stated he intended to put the Property up for auction but does not allege that Plaintiff objected to Packer's stated intention. (*Id.* at ¶ 31.) Plaintiff asked to be reimbursed for its out-of-pocket costs in the project (*Id.* at ¶ 32) and dissolved the limited liability company it had formed "to carry out the [J]oint [V]enture's business." (*Id.* at ¶ 24.) . . . The allegations in the Amended Complaint establish that the Joint Venture dissolved on or about August 31, 2016.

(*Id.* at ¶¶ 33–34.)  MI contends that the Court's ruling on this issue was incorrect.

39.     North Carolina Rule of Civil Procedure 54(b) is the source of a litigant's ability to request reconsideration of a prior ruling by the Court.  *Pender Farm Dev., LLC v. NDCO, LLC*, 2020 NCBC LEXIS 110, at *4 (N.C. Super. Ct. Sept. 25, 2020).

40.     This Court has summarized its standard of review in assessing a motion under Rule 54(b) as follows:

> Under Rule 54(b), interlocutory orders are "subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties."  N.C. Gen. Stat. § 1A-1, Rule 54(b). "Although the North Carolina courts have not formulated a standard to guide trial courts in considering a motion to amend an interlocutory ruling under Rule 54(b), federal case law addressing similarly worded portions of Federal Rule 54(b) provides useful guidance." *In re Se. Eye Center-Judgments*, 2017 NCBC LEXIS 77, at *9 (N.C. Super. Ct. Aug. 22, 2017).  A motion for reconsideration under Rule 54(b) is within the trial court's discretion. *Akeva L.L.C. v. Adidas Am., Inc.*, 385 F. Supp. 2d 559, 565 (M.D.N.C. 2005); *Ward v. FSC I, LLC*, 2017 NCBC LEXIS 19, at *6 (N.C. Super. Ct. Mar. 7, 2017).  "Most courts have adhered to a fairly narrow set of grounds on which to reconsider their interlocutory orders and opinions." *Akeva L.L.C.*, 385 F. Supp. 2d at 565.  These grounds include "(1) the discovery of new evidence, (2) an intervening development or change in the controlling law, or (3) the need to correct a clear error or prevent manifest injustice." *RF Micro Devices, Inc. v. Xiang*, 1:12CV967, 2016 U.S. Dist. LEXIS 74550, at *3–4 (M.D.N.C. June 8, 2016).  "Such problems rarely arise and the motion to reconsider should be equally rare." *DirecTV, Inc. v. Hart*, 366 F. Supp. 2d 315, 317 (E.D.N.C. 2004) (quoting *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985)).  "A motion for reconsideration is not a vehicle to identify facts or legal arguments that could have been, but were not, raised at the time the relevant motion was pending." *Julianello v. K-V Pharm. Co.*, 791 F.3d 915, 923 (8th Cir. 2015).  "The limited use of

> a motion to reconsider serves to ensure that parties are thorough and accurate in their original pleadings and arguments presented to the Court. To allow motions to reconsider offhandedly or routinely would result in an unending motions practice." *Wiseman v. First Citizens Bank & Tr. Co.*, 215 F.R.D. 507, 509 (W.D.N.C. 2003).

*W4 Farms, Inc. v. Tyson Farms, Inc.*, 2017 NCBC LEXIS 99, at \*4-5 (N.C. Super. Ct. Oct. 19, 2017).

41. The Court rejects MI's request for reconsideration in the present case for several reasons.

42. First, MI's request is procedurally improper. The North Carolina Business Court Rules require that a motion be contained in a separate document and accompanied by a supporting brief. BCR 7.2. Because MI has not complied with either of these requirements and instead has simply attempted at the summary judgment stage to include within its brief a request that the Court revisit a prior ruling, no Rule 54(b) motion has properly been presented to the Court.

43. Second, reconsideration of the Court's prior Order would be improper based on the well-established rule that one Superior Court judge is not permitted to overrule another Superior Court judge. *See, e.g., Smithwick v. Crutchfield*, 87 N.C. App. 374, 376 (1987). The prior ruling as to which MI seeks reconsideration was rendered by Judge McGuire rather than by the undersigned.

44. It is true that one Superior Court judge may modify another Superior Court judge's prior ruling if the order as to which modification is sought was (1) interlocutory; (2) discretionary; and (3) there has been a substantial change in

circumstances since the entry of the prior order. *County of Catawba v. Frye Reg'l Med. Ctr., Inc.*, 2015 NCBC LEXIS 18, at \*\*6 (N.C. Super. Ct. Feb. 25, 2015). However, Judge McGuire's prior order was not discretionary, as it was made as a matter of law pursuant to Rule 12(c). Additionally, given that the ruling was made *based on the allegations contained within MI's pleading*, this is not a ruling that could be modified by the undersigned regardless of the existence of new facts allegedly obtained during discovery.

45. In other words, this was not merely a preliminary ruling at the pleadings stage that was subject to change at the summary judgment stage based on evidence obtained during intervening discovery by the parties. Rather, it was a definitive ruling that was based on MI's own allegations in its Amended Complaint. The argument presently being asserted by MI is that Judge McGuire's ruling was incorrect *ab initio* and should be retroactively reversed. The undersigned lacks the authority to grant such relief.

46. The Court notes that MI had appropriate avenues in which to raise this issue before Judge McGuire but that it failed to do so. For example, MI could have filed a motion for reconsideration under Rule 54(b)—one that complied with BCR 7.2— closer in time to the Court's February 22, 2021 Order while Judge McGuire was still the Superior Court judge assigned to this case. Alternatively, MI could have sought leave from the Court to amend its Complaint so as to allege facts sufficient to support a conclusion that the Joint Venture was not, in fact, dissolved as of August 2016. However, MI did not take either of these steps.

47.     Accordingly, the Court rejects MI's request for modification of the Court's prior ruling in its February 22, 2021 Order.

## B. Defendants' Motions for Summary Judgment as to MI's Claims

48.     The Court will first address Defendants Packer, PIC, PA&K, OBGP, KPP, and KIC's Motions for Summary Judgment as to MI's claims that survived the Court's Orders at the Rule 12 stage—that is, MI's claims for breach of fiduciary duty, conversion, unfair and deceptive trade practices, and civil conspiracy.

### 1.     Breach of Fiduciary Duty

49.     MI alleges that PA&K and OBGP breached their fiduciary duties to MI on two theories (1) failure to account for subsequent use of Joint Venture assets; and (2) failure to provide true and full information upon MI's request regarding Joint Venture assets.

50.     A breach of fiduciary duty claim requires (1) a fiduciary duty owed by the defendant to the plaintiff; (2) a breach of that duty by the defendant; and (3) the defendant's conduct proximately causing injury to the plaintiff. *Chisum v. Campagna*, 376 N.C. 680, 706 (2021) (quotation omitted).

#### a.     Use of Joint Venture Assets

51.     MI contends that a genuine issue of material fact exists as to whether assets belonging to the Joint Venture were improperly used in the KPP Project. Defendants, conversely, deny that any such assets were actually used. The Court concludes that MI has failed to meet its burden of establishing the existence of a genuine dispute of material fact sufficient to defeat summary judgment on this claim.

52. "A joint [venture] is in the nature of a kind of partnership, and although a partnership and a joint [venture] are distinct relationships, they are governed by substantially the same rules." *Jones v. Shoji*, 336 N.C. 581, 585 (1994) (quotation omitted). North Carolina's General Statutes provide that one partner must "account to the partnership for any benefit and hold as a trustee for it any profits derived by him without the consent of the other partners from any transaction connected with the formation, conduct, or liquidation of the partnership or from any use by him of its property." N.C.G.S. § 59-51(a) (2019).

53. In connection with their Motion for Summary Judgment on this issue, PA&K and OBGP have submitted affidavits from both Packer and Poole who each testified that no assets of the Joint Venture were used in connection with the KPP Project.

54. MI does not contend that the land that was to have been utilized for the original RV Park qualifies as an asset of the Joint Venture. Instead, MI argues that the work product of the companies with whom the Joint Venture contracted—that is, Tetra Tech, Site Design, Blue Ridge, and BowStern—was in possession of Packer who, in turn, used these materials to further the KPP project.

55. However, the Court concludes that MI has failed to come forward with admissible evidence sufficient to rebut the sworn testimony of Packer and Poole that no assets belonging to the Joint Venture were actually used in connection with the KPP Project.

56. In their respective affidavits, Morris and Greg Wessling, MI's Chief Operating Officer, simply make conclusory statements concerning their belief that the KPP Project utilized assets belonging to the Joint Venture.

57. Morris states that "*[i]t appears a jury could very well find* that defendants necessarily utilized plans and other assets of the Olde Beau Joint Venture in commencing and developing the RV resort at Olde Beau." (ECF No 104.32, at ¶ 26 (emphasis added).)

58. Similarly, Wessling states that "*[i]t appears* the RV project currently being undertaken by the defendants is largely based on the work MI did during 2015, including the design of the lots, the locations of the first two phases, and the other advancements made toward this project under the joint venture with MI." (ECF No. 104.33, at ¶ 9 (emphasis added).)

59. These statements by Morris and Wessling merely constitute speculation and are insufficient to create a genuine issue of material fact on this issue.

60. MI also attempts to rely on "compare documents" attached to the affidavits of Morris and Wessling. These "compare documents" are visual comparisons between the conceptual design plans prepared by Site Design for the Joint Venture alongside photos taken by Morris of the KPP Project's progress. MI contends that these photos establish a genuine factual dispute regarding the use of the Site Design plans in the KPP project, arguing that the comparison photos are suggestive of such use.

61. Our appellate courts have made clear that lay testimony is generally insufficient to create a factual dispute in matters that are outside the scope of a layperson's customary intelligence and experience. *See, e.g., Davis v. City of Mebane*, 132 N.C. App. 500, 504 (1999). In *Davis*, the court upheld the trial court's entry of summary judgment where the plaintiff provided only lay testimony regarding the cause of downstream flooding, as "lay testimony would not be sufficient to explain changes in the watershed or in the downstream water flow." *Id.* (quotation omitted).

62. Absent accompanying, and legally sufficient, testimony from a witness possessing demonstrated specialized knowledge on this technical subject, the "compare documents" are insufficient to preclude the entry of summary judgment on the issue of whether KPP actually used the Site Design plans prepared for the Joint Venture. Thus, the Court concludes that neither the "compare documents" nor the testimony of Morris and Wessling are sufficient to create a genuine dispute of material fact.

63. In addition, the record is devoid of testimony from employees of contractors or subcontractors who actually worked on the KPP Project and would have been able to provide personal knowledge regarding this subject.

64. Accordingly, the Motion for Summary Judgment of PA&K and OBGP is GRANTED regarding MI's first theory in support of its breach of fiduciary duty claim.

**b.** **Failure to Provide Information Related to the Joint Venture**

65. MI's second argument in support of its breach of fiduciary duty claim is that the April 21, 2018 letter from Morris' attorney to Packer constituted a demand

for true and accurate information regarding the status of Joint Venture assets and that Packer failed to provide this information as required by law. The Court agrees that MI has established a genuine issue of material fact as to this claim.

66. As noted above, joint ventures are largely governed by the same rules as partnerships, *Jones*, 336 N.C. at 585, and partners owe certain fiduciary duties to each other. *Compton v. Kirby*, 157 N.C. App. 1, 15 (2003). North Carolina General Statute § 59-50 requires that "[p]artners shall render on demand true and full information of all things affecting the partnership to any partner." N.C.G.S. § 59-50 (2019).

67. As noted above, the April 21, 2018 letter requested "relevant information about the project including its current status, prospects going forward, and plans for further development of the joint venture project." (ECF No. 96.27.) Morris' attorney asked Packer to provide "relevant information and documents, including but not limited to: books and records of the project, drawings and plans, marketing materials and plans, any existing or pending contracts with vendors and purchasers, and other information relevant to the project." (*Id.*)

68. In the Court's February 22, 2021 Order, the Court stated the following:

> The Court concludes that PA&K and OBGP owed fiduciary duties to Plaintiff following dissolution of the Joint Venture and through the period during which Plaintiff was entitled to seek a winding up. PA&K and OBGP had continuing obligations to preserve, account for, and distribute partnership property assets, and to provide an accounting of partnership assets, through on or about August 31, 2019. . . . Plaintiff also alleges that after it learned of the New Venture, presumably sometime in late 2017 or 2018, Plaintiff "demanded, as a partner in the [ ] Joint Venture,

> relevant information about the project, including 'books and records of the project, marketing materials and plans, any existing or pending contracts with vendors or purchasers, and other information relevant to this project,' " but that Packer refused to provide the information. (*Id.* at ¶ 39.) Plaintiff filed this lawsuit on March 2, 2020. Therefore, Plaintiff alleges [a] timely claim[ ] for breach of fiduciary duty for . . . failure to provide access to the books, records, and other information regarding the Joint Venture.

(ECF No. 92, at ¶ 43.)

69. In response to MI's argument, PA&K and OBGP contend that the April 21, 2018 letter was not, in fact, a demand for information about the *Joint Venture* but rather constituted a request for information about the *KPP Project*. As such, they argue, Packer had no legal obligation to respond to the letter because Morris was not involved in the KPP Project and therefore was not entitled to receive information about it.

70. The Court disagrees with this characterization of the April 21 letter—at least at the summary judgment stage. The letter can be read as a demand for information *regarding the Joint Venture* as it does not clearly differentiate between the prior and current RV projects at Olde Beau. A reasonable juror could construe it as reflecting Morris' desire to ascertain whether the ongoing work on the site he had witnessed several months earlier meant that a change in circumstances had allowed the Joint Venture to continue despite the earlier setbacks to the project. As the Court ruled in its February 22, 2021 Order, a fiduciary duty continued to exist between MI, PA&K, and OBGP at the time the letter was sent, and a rational factfinder could

conclude that this duty was breached by the failure of Packer to meaningfully respond to this letter.

71. The Court also rejects the argument of PA&K and OBGP that summary judgment is proper on the ground that Morris' request for information was futile in that Packer had no responsive information to provide. The Court's review of the record reveals a factual dispute on this issue.

72. Finally, the Court likewise finds unavailing the argument by PA&K and OBGP that summary judgment on this claim is appropriate based on evidence suggesting that Morris did not renew the request previously made in the letter at the subsequent meeting between him and Packer. The record is devoid of evidence suggesting that Morris ever unambiguously withdrew the request for information about the Joint Venture contained in the April 21 letter.

73. Therefore, PA&K and OBGP's Motion for Summary Judgment is DENIED as to MI's claim for breach of fiduciary duty based on this theory.

### 2. Conversion

74. PA&K, OBGP, PIC, and KIC contend that summary judgment is appropriate as to MI's conversion claim based on MI's failure to offer evidence of a valid demand for the return of Joint Venture assets. The Court agrees.

75. Under North Carolina law, "two essential elements are necessary in a claim for conversion: (1) ownership in the plaintiff, and (2) a wrongful conversion by the defendant." *Steele*, 238 N.C. App. at 574 (quotation omitted). In cases where the defendant comes into possession of the plaintiff's property lawfully, the plaintiff must

show that it made a demand for the return of the property that was refused by the defendant. *Hoch v. Young*, 63 N.C. App. 480, 483 (1983) (citations omitted).

76. Even assuming *arguendo* that one partner's failure to return partnership property to another partner can constitute a claim for conversion, there is no evidence in the record suggesting that any property belonging to the Joint Venture came into Packer's hands illegally. To the contrary, Morris' own testimony was that he voluntarily sent to Packer materials obtained from the companies with whom he contracted on behalf of the Joint Venture. As a result, MI was required to show that an actual demand was made for the return of the specific assets lawfully in Packer's possession. Evidence of that essential element is not present in the record currently before the Court.

77. As noted above, the April 21, 2018 letter can be interpreted as a request for information about the Joint Venture. The letter cannot be rationally construed, however, as a demand for the return of specific Joint Venture assets as would be required to support a claim for conversion.

78. Our case law has generally required a demand for the return of *specific* property in order to establish a valid claim for conversion under comparable circumstances. *See Griffith v. Glen Wood Co.*, 184 N.C. App. 206, 208, 214 (2007) (finding a conversion when defendant wrongfully retained possession of a valuable auto part); *Myers v. Catoe Constr. Co.*, 80 N.C. App. 692, 696 (1986) ("[Defendant] did not return the El Camino after [his former employer] wrote [defendant] a letter requesting [defendant] return the vehicle."); *Gallimore v. Sink*, 27 N.C. App. 65, 65–

67 (1975) ("[P]laintiff has alleged ownership of the silver dollars and pistol. With respect to whether there was a wrongful conversion, plaintiff alleged that the Sheriff took possession of the property[.]").

79.     Although MI argues that the April 21, 2018 letter constituted such a demand, the language contained therein requesting, for example, "drawings and plans" is too vague and ambiguous to satisfy this element.  In order for this element of a conversion claim to be satisfied, the defendant must be put on clear notice of the specific items that are being demanded, which did not occur from the mere sending of this letter.

80.     Therefore, Defendants have demonstrated that there is no genuine dispute of material fact as to MI's conversion claim.  As a result, the Motions for Summary Judgment of PA&K, OBGP, and PIC should be GRANTED as to this claim.

### 3.     Unfair and Deceptive Trade Practices

81.     MI has also asserted a claim for unfair and deceptive trade practices ("UDTP") against Packer, PA&K, OBGP, PIC, KPP, and KIC.

82.     North Carolina law forbids "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce."  N.C.G.S. § 75-1.1(a) (2019).  For purposes of the statute, commerce includes "all business activities, however denominated." *Id.* at § 75-1.1(b).

83.     In order to prevail on a UDTP claim, a plaintiff must show (1) an unfair or deceptive act or practice, or unfair method of competition (2) in or affecting commerce (3) that proximately caused actual injury to the plaintiff.  *Gray v. North*

*Carolina Ins. Underwriting Ass'n*, 352 N.C. 61, 68 (2000) (citations omitted). An act giving rise to a breach of fiduciary duty is generally sufficient to constitute an unfair and deceptive trade practice. *White v. Thompson*, 196 N.C. App. 568, 574 (2009), *aff'd*, 364 N.C. 47 (2010).

84. Under North Carolina law, however, acts relating to the internal conduct of a partnership are not deemed to be "in or affecting commerce" under UDTP. *See White*, 196 N.C. App. at 572–74. In *White*, the court rejected a UDTP claim against a partner of the plaintiffs where the allegedly unfair or deceptive acts concerned the defendant's breach of the duty of loyalty to the partnership, holding that "this usurpation harmed [the partnership] and Plaintiffs, but had no impact in the broader marketplace." *Id.* at 573.

85. Defendants contend that MI's UDTP claim must fail because none of their alleged breaches of fiduciary duty were "in commerce" because all such acts would have occurred solely between partners to the Joint Venture.

86. As discussed above, the Court has concluded that the only theory underlying MI's breach of fiduciary duty claim that is sufficient to survive summary judgment is the claim alleging a violation of N.C.G.S. § 59-50. Even if MI is able to prove at trial that the failure by Packer to provide the requested information to Morris regarding the Joint Venture constituted a breach of fiduciary duty, such conduct was not "in or affecting commerce" within the meaning of Chapter 75 because it existed solely between partners. Accordingly, as in *White*, those allegations cannot form the basis for MI's UDTP claim.

87. Despite a careful and thorough review of the record in light of the assertions made by MI on this issue, the Court is unable to find evidence of other acts or omissions by Defendants that would create a genuine issue of material fact for purposes of MI's UDTP claim.

88. Therefore, the Motions for Summary Judgment of Packer, PA&K, OBGP, PIC, KPP, and KIC are GRANTED as to MI's UDTP claim.

### 4. Civil Conspiracy

89. Finally, MI contends that it has put forth sufficient evidence of a civil conspiracy claim against Packer, PA&K, OBGP, PIC, KPP, and KIC to withstand their motion for summary judgment.

90. Civil conspiracy requires "(1) an agreement between two or more individuals; (2) to do an unlawful act or to do a lawful act in an unlawful way; and (3) resulting in injury to plaintiff inflicted by one or more co-conspirators; and (4) pursuant to a common scheme." *Strickland v. Hedrick*, 194 N.C. App. 1, 19 (2008) (quotation omitted). It is well established that

> [t]here is no independent cause of action for civil conspiracy. Only where there is an underlying claim for unlawful conduct can a plaintiff state a claim for civil conspiracy by also alleging the agreement of two or more parties to carry out the conduct and injury resulting from that agreement.

*Toomer v. Garrett*, 155 N.C. App. 462, 483 (2002) (citations omitted).

91. In support of this claim, MI appears to be arguing that on the facts of this case it was unlawful for Packer (and his affiliated entities) to enter into an agreement with other individuals or entities regarding a new RV project at Olde Beau

after abandoning the Joint Venture with MI. However, such an argument lacks merit. Although—as discussed above and in the Court's February 22, 2021 Order—PA&K and OBGP may have continued to possess certain limited fiduciary duties with regard to the Joint Venture post-dissolution, there was no legal impediment to Packer participating in the KPP Project under these circumstances. Moreover, the alleged failure of Packer to respond to the April 21, 2018 letter cannot, by itself, support a claim for civil conspiracy.

92. Therefore, Defendants' Motions for Summary Judgment are GRANTED as to MI's civil conspiracy claim.

### C. KPP's Motion for Summary Judgment

93. Finally, KPP has moved for partial summary judgment on one of its four counterclaims—tortious interference with contract.[2]

94. Our Supreme Court has stated:

> The tort of interference with contract has five elements: (1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to plaintiff.

*United Labs, Inc. v. Kuykendall*, 322 N.C. 643, 661 (1998) (citation omitted).

95. KPP contends that it is entitled to summary judgment on this counterclaim based on its assertion that it had valid contracts for sales as to various parcels of land in the new RV development, that MI filed a notice of lis pendens with

---

[2] KPP seeks summary judgment on this counterclaim solely as to liability and not as to damages.

the intent to prevent the sales under those contracts from going forward, and that MI did so without justification.

96. The Court finds that KPP has failed to show its entitlement to summary judgment as to its counterclaim for tortious interference with contract. At a minimum, KPP has failed to show the absence of a genuine issue of material fact on the question of whether MI actually contacted third parties for the purpose of inducing them not to go forward with their contracts to purchase the lots at issue. In his affidavit, Morris has testified that he did not contact any of the third-party purchasers. Although KPP argues that the mere filing of a notice of lis pendens by a defendant is sufficient to satisfy this element of the tort as a matter of law, neither KPP's brief nor the Court's own research has identified any case from North Carolina courts so holding.

97. Thus, given that a genuine issue of material fact exists regarding the intentional inducement element, the Court need not address the parties' arguments as to whether factual disputes also exist as to the other elements of this counterclaim.

98. KPP's Motion for Partial Summary Judgment as to its counterclaim for tortious interference with contract is therefore DENIED.

## CONCLUSION

THEREFORE, it is HEREBY ORDERED as follows:

1. PA&K and OBGP's motion seeking summary judgment as to MI's breach of fiduciary claim based on a theory of failure to account for

subsequent use of Joint Venture assets is GRANTED, and the claim is dismissed.

2. PA&K and OBGP's motion seeking summary judgment as to MI's breach of fiduciary duty claim based on a theory of failure to provide true and full information, upon request, regarding Joint Venture assets is DENIED.

3. PA&K, OBGP, PIC, and KIC's motions seeking summary judgment on MI's conversion claim are GRANTED, and the claim is dismissed.

4. Packer, PIC, PA&K, OBGP, KPP, and KIC's motions seeking summary judgment on MI's unfair and deceptive trade practices claim are GRANTED, and the claim is dismissed.

5. Packer, PIC, PA&K, OBGP, KPP, and KIC's motions seeking summary judgment on MI's claim for civil conspiracy are GRANTED, and the claim is dismissed.

6. KPP's Motion for Partial Summary Judgment as to its counterclaim for tortious interference with contract is DENIED.

SO ORDERED, this the 2nd day of November, 2021.

/s/ Mark A. Davis
Mark A. Davis
Special Superior Court Judge for
Complex Business Cases